## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**KEVIN PASSAFIUME,**

      **Plaintiff,**

**vs.**                                **Case No.: 8:14-CV-1161-T-EAJ**

**CAROLYN COLVIN,**
**Acting Commissioner of Social**
**Security Administration,**

      **Defendant.**

_____/

### <u>ORDER</u>

Plaintiff brings this action pursuant to the Social Security Act ("the Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the administrative record, and the pleadings and memoranda submitted by the parties in this case, the undersigned affirms the Commissioner's decision and dismisses this case.[1]

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. <u>See</u> 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth v. Heckler,</u>

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge. (Dkt. 15)

703 F.2d 1233, 1239 (11th Cir. 1983).   If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

## I. Background

On May 9, 2012, Plaintiff filed applications for SSI and DIB, alleging disability beginning April 20, 2010. (T 286, 293)  Plaintiff's applications were denied initially and upon reconsideration, and an administrative hearing was held on September 3, 2013. (T 109, 157, 158, 185, 186)  Forty-four years old at the time of the hearing, Plaintiff has a high school education and past relevant work experience as a motor coach operator, route sales delivery driver, and van driver. (T 97)

On October 31, 2013, an ALJ denied Plaintiff's application. (T 99)  Plaintiff's severe impairments included disorders of the spine, obstructive sleep apnea, hypertension, congestive heart failure, fibromyalgia, unspecified idiopathic peripheral neuropathy, osteoarthritis, cervicalgia, obesity, and history of atrial fibrillation. (T 87)  But, these impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1. (T 89-90)  Despite these impairments, Plaintiff was determined to have a residual functional capacity ("RFC") for light work with the following restrictions: limited to occasionally reaching overhead and climbing ramps

and stairs; must never climb ladders, ropes, or scaffolds; limited occasionally crawling, crouching, kneeling, stooping, and balancing; and must avoid concentrated exposure to vibration. (T 90)

While finding Plaintiff unable to perform his past relevant work as a motor coach operator, route sales delivery driver, or van driver, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff was capable of performing jobs available in significant numbers in the national economy, such as ticket taker, counter clerk, and work ticket distributor. (T 97-98) Accordingly, the ALJ concluded that Plaintiff was not disabled during the relevant period. (T 99) On March 14, 2014, the Appeals Council denied review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (T 1-3)

The medical and other evidence has been reviewed in the ALJ's decision and will not be repeated here except as necessary to address the issues presented.

## II. Analysis

On appeal, Plaintiff contends that the Appeals Council erred by failing to remand the claim after receipt of additional evidence after the ALJ's decision and that the ALJ erred by failing to include any limitations related to Plaintiff's obstructive sleep apnea in the RFC assessment and by improperly rejecting Plaintiff's subjective pain complaints.

A.     Plaintiff first alleges that the Appeals Council erred by failing to remand his claim after he submitted objective medical findings that support his subjective complaints and were material to the period of time adjudicated by the ALJ.

A claimant generally is entitled to present new evidence at each stage of the administrative process. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1261 (11th Cir. 2007) (citation omitted).  When submitted for the first time to the Appeals Council, new evidence becomes part of

the administrative record. <u>Keeton v. Dep't of Health & Human Servs.</u>, 21 F.3d 1064, 1067 (11th Cir. 1994). "In reviewing decisions based on an application for benefits, if new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 416.1470(b). The Appeals Council then considers the entire record, including the new evidence, and will review the ALJ's decision if it is contrary to the weight of the current evidence of record. <u>Smith v. Soc. Sec. Admin.</u>, 272 F. App'x 789, 800-01 (11th Cir. 2008) (per curiam) (unpublished) (citation omitted).[2] If the Appeals Council denies review, the district court may evaluate whether the denial is appropriate under sentence four of 42 U.S.C. § 405(g). <u>Ingram</u>, 496 F.3d at 1269. The court should assess whether the Commissioner's final decision is supported by substantial evidence in the record as a whole. <u>See</u> <u>id.</u> at 1266-67.

After the ALJ's decision, Plaintiff submitted a nerve conduction study conducted dated January 20, 2014, signed by Gloydian Cruz, M.D. ("Dr. Cruz"). (T 1136-40) Based on the electrodiagnostic findings and impressions, Dr. Cruz concluded that Plaintiff had sensory peripheral neuropathy of the upper extremities and bilateral carpal tunnel syndrome. (T 1140)

Plaintiff maintains that, had these findings been considered by the ALJ at the time of her decision, "there is a reasonable probability [the ALJ] would have founded that the Plaintiff's carpal tunnel syndrome constituted a severe impairment and found that he had limitations as a result." (Dkt. 22 at 10) Accordingly, Plaintiff contends that this new evidence was material and the Appeals Council erred by failing to remand the claim for a new decision.

---

[2] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

However, the nerve conduction study report was cumulative of evidence already before the ALJ when she made her decision.   The ALJ determined that Plaintiff suffered from a severe impairment of unspecified idiopathic peripheral neuropathy. (T 87)   Additionally, the ALJ considered an earlier EMG report showing sensory neuropathy in Plaintiff's ulnar and median nerves. (T 88, 924)   However, the physical examinations by Plaintiff's neurologist showed no neurological or sensory deficits, as discussed by the ALJ. (T 93)

The nerve conduction study's finding as to carpal tunnel syndrome and neuropathy does not render the denial of benefits erroneous as it is cumulative evidence, does not contain any functional limitations, and does not undermine the substantial evidence supporting the ALJ's decision. Accordingly, the Appeals Council did not err in finding that this new evidence was not material Plaintiff's claim. See Mitchell v. Comm'r, Soc. Sec. Admin., 771 F.3d 780, 785 (11th Cir. 2014).

**B.**     Plaintiff next contends that the ALJ erred when she found Plaintiff's obstructive sleep apnea to be a severe impairment but failed to include any limitations from this impairment in the RFC assessment.

A severe impairment is one that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c).   Basic work activities are those abilities and aptitudes necessary to do most jobs; for example, the ability to walk, stand, sit, lift, and carry out simple instructions. 20 C.F.R. § 404.1521(b).   The severity of an impairment must be measured "in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).

In determining that Plaintiff's sleep apnea was a severe impairment, the ALJ stated:

In addition, the claimant complained of sleep problems, and a polysomnogram revealed obstructive sleep apnea.  Physicians diagnosed the claimant with a history

of obstructive sleep apnea and and noncompliance with his CPAP mask. When using a BiPAP, a polysomnogram showed his sleep apnea had improved. The claimant's doctor noted the claimant was not compliant with his BiPAP reportedly due to pain, but the claimant had significant improvement when he used it.

(T 88-89) (internal citations omitted)[3]

Plaintiff alleges that the ALJ did not incorporate limitations correlated to this impairment in the RFC assessment, stating, "Even if the [ALJ] did not totally accept the Plaintiff's complaints of extreme fatigue, there should be some findings of limitations as a result of the Plaintiff's obstructive sleep apnea." (Dkt. 22 at 6)  Plaintiff posits examples of limitations the ALJ could have provided, such as moderate limitations in the ability to concentrate or the need to take one or two unscheduled breaks a month due to fatigue. The Commissioner responds that, in limiting Plaintiff to light work, "the ALJ expressly considered Plaintiff's testimony regarding his obstructive sleep apnea, the medical treatment he had received for this condition, and examinations showing normal attention and concentration." (Dkt. 23 at 4) (internal citations omitted)

However, despite Plaintiff's argument to the contrary, "the prevailing rule is that an ALJ does not err solely because she finds an impairment 'severe' at step two but does not attribute any limitation to that impairment in assessing the claimant's RFC." Davis v. Comm'r of Soc. Sec., No. 6:12-CV-1694-ORL-36TBS, 2013 WL 6182235, at *6 (M.D. Fla. Nov. 25, 2013) (adopting report and recommendation) (collecting cases). This is so because step two "is a threshold inquiry . . .

---

[3] CPAP is an abbreviation for "continuous positive air pressure," a breathing device worn while sleeping. Keene v. Astrue, No. 5:09cv192-SPM/WCS, 2010 WL 2404421, at *2 n.2 (N.D. Fla. May 20, 2010) (citation omitted). Often prescribed for people with sleep apnea, a CPAP machine keeps the throat open by providing slightly higher pressure in the airway. Id. Similar to a CPAP, a BiPAP machine, an abbreviation for "bilevel positive airway pressure," is also used by individuals with sleep apnea. See Kelly v. Comm'r of Soc. Sec., No. 6:08-CV-1751-Orl-19DAB, 2010 WL 582771, at *8 (M.D. Fla. Feb. 18, 2010) aff'd, 401 F. App'x 403 (11th Cir. 2010).

[and] [a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work . . . ." McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986).

In developing the RFC assessment, the ALJ addressed Plaintiff's testimony regarding his obstructive sleep apnea, discussed the medical records regarding his treatment for the impairment, and noted that examinations showed Plaintiff's attention and concentration were normal. (T 91, 94) The ALJ's RFC assessment found that Plaintiff was capable of performing light work[4] with additional nonexertional restrictions. (T 90)

However, Plaintiff cites no evidence of sleep apnea-related functional limitations inconsistent with the ALJ's RFC assessment that permits him to perform a limited range of light work. And, as discussed infra, the ALJ properly evaluated Plaintiff's subjective pain complaints, including his allegations of fatigue. The mere existence of Plaintiff's impairments does not reveal the extent to which they limit his ability to work. See Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (per curiam). As the ALJ properly considered the limitations resulting from obstructive sleep apnea, including limiting Plaintiff to a limited range of light work, this issue does not entitle Plaintiff to relief.

**C.**     Finally, Plaintiff argues that the ALJ improperly discredited Plaintiff's testimony related to

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567.

his limitations from sleep apnea despite finding that his sleep apnea was a severe impairment.

Subjective complaints are evaluated according to a three-part "pain standard" used to evaluate a claimant's testimony about pain or other subjective symptoms. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam).  A plaintiff must show: (1) objective medical evidence of an underlying medical condition; and either (2) the objective medical evidence substantiates the severity of the pain from the condition, or (3) the objectively determined medical condition is of sufficient severity that it would reasonably be expected to produce the pain alleged. Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986) (per curiam).  If the ALJ does not credit a claimant's testimony regarding subjective complaints, the ALJ must "articulate explicit and adequate reasons for doing so." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (per curiam).  A clearly articulated credibility finding that is substantially supported by the record will not be overturned. Id. at 1562 (citation omitted).

At the hearing, Plaintiff testified that he takes unexpected naps during the day (T 123); he tried to use a BiPAP machine but failed the trial period because he couldn't keep the mask on his face due to claustrophobia and would wake up and pull off the mask.  He tried both the nozzles and the mask, but was able to keep them on only about an hour. (T 124)

In discussing Plaintiff's testimony, the ALJ noted that Plaintiff said he had stopped working because he did not sleep well due to his sleep apnea and that Plaintiff was unable to keep the CPAP mask on his face. (T 91)  Additionally, the ALJ discussed Plaintiff's alleged limitations relating to sleep apnea, stating:

> In addition, the record does not support the claimant's alleged limitations arising out of sleep problems including obstructive sleep apnea.  He has a history of noncompliance with his CPAP/BiPAP mask.  When using a BiPAP, a polysomnogram showed his sleep apnea had improved.  Other notes show the

claimant had significant improvement when he used it.  As stated above, he engaged in a wide range of daily activities indicating he is more capable than he alleges. Thus, the undersigned finds his sleep apnea and sleep problems are not as limiting as alleged.

(T 94) (internal citations omitted)

Plaintiff alleges that the ALJ mischaracterized Plaintiff's noncompliance with the CPAP/BiPAP mask, stating that Plaintiff could not tolerate the machine, despite trying to use it.

However, the medical evidence cited by the ALJ regarding Plaintiff's treatment for sleep apnea demonstrates that Plaintiff was not compliant with recommended treatment.  A July 9, 2012 emergency department report signed by Lakshmi Kolli, M.D., notes Plaintiff's noncompliance with the CPAP mask and other medications for his obstructive sleep apnea. (T 698)  A BiPAP polysomnogram performed on August 14, 2012 indicated significant improvement of Plaintiff's obstructive sleep apnea, but Plaintiff indicated that he felt the machine was not functioning properly. (T 961)  On January 2, 2013, Plaintiff followed up with Domenick J. Sorresso, M.D., to discuss his BiPAP trial.  Plaintiff had not been compliant due to severe pain, but when he wore the CPAP it worked for him. (T 1048)  Plaintiff was prescribed a small dose of Xanax to help with his anxiety but was informed that he would not be given refills. (Id.)  By citing evidence of noncompliance, the ALJ made an implicit credibility determination rejecting Plaintiff's testimony that he was unable to keep the mask on his face, given reports from physicians the he was non-compliant. The ALJ properly considered this evidence of Plaintiff's noncompliance as a factor in discrediting his testimony. See Ellison v. Barnhart, 355 F.3d 1272, 1277 (11th Cir. 2003) ("[W]e conclude that Ellison's noncompliance with prescribed medical treatment, which the ALJ used as a factor in discrediting his allegations of disability, is supported by substantial evidence.").

The ALJ's determination that Plaintiff was less than credible is supported by substantial

evidence.  In addition to the specific findings related to Plaintiff's credibility regarding his testimony about sleep apnea, the ALJ provided additional reasons for finding Plaintiff less than credible.

First, the ALJ found that Plaintiff engaged in a wide range of activities that were inconsistent with his multiple allegations of physical and social limitations.  Among the ALJ's reasons were that Plaintiff watched his children and drove them to school, attended church and doctors' appointments, spent his days watching television and using the computer to sell items online, shopped for groceries, emptied the dishwasher, and prepared simple meals. (T 92)

The ability to engage in everyday activities of short duration such as housework or fishing does not disqualify a claimant from receiving disability benefits.  Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997).  However, the Commissioner may properly rely on a claimant's daily activities, among other evidence, in determining whether a claimant is entitled to disability benefits.  Hoffman v. Astrue, 259 F. App'x 213, 219 (11th Cir. 2007) (per curiam) (unpublished) (citations omitted).

Although Plaintiff challenges the ALJ's reliance on Plaintiff's selling items online and going to church once a week,[5] the ALJ articulated other valid reasons for discrediting Plaintiff's testimony.  The error, if any, in relying on these two daily activities was "harmless because the remaining evidence provided a substantial basis for the ALJ's conclusion." See Brown v. Comm'r of Soc. Sec., 459 F. App'x 845, 846 (11th Cir. 2012) (per curiam) (unpublished) (citing Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983)).

---

[5] Plaintiff testified that he sold belongings online to support his family but that he could only do so for about twenty minutes at a time, sometimes "a little bit longer," before stopping for rest. (T 116-17)  Additionally, Plaintiff testified that while he tries to go to church once a week, he sometimes cannot get out of bed on weekends. (T 120)

10

Additionally, the ALJ noted most of Plaintiff's treatment was conservative, consisting primarily of medication management, that surgery was not recommended, and that objective medical imaging revealed minimal findings.[6] (T 92-93)  The ALJ also found that Plaintiff responded well to medication but was not always compliant. (Id.)  Conservative treatment is a valid reason for discrediting a claimant's credibility. See Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996) (finding that the ALJ properly noted claimant's conservative treatment as evidence to discredit his subjective complaints).

Accordingly, the ALJ's credibility determination is clearly articulated and is supported by substantial evidence. See Wilson v. Heckler, 734, F.2d 513, 517 (11th Cir. 1984) (per curiam); Allen v. Sullivan, 880 F.2d 1200, 1202-03 (11th Cir. 1989) (per curiam) ("[T]he ALJ specifically articulated at least three reasons for rejecting appellant's subjective complaints of pain.").  As credibility assessments are in the purview of the ALJ, not the Court, this issue does not entitle Plaintiff to relief.

## Conclusion

The ALJ's decision is supported by substantial evidence and the proper legal principles. The decision of the Commissioner is therefore affirmed.

Accordingly and upon consideration, it is **ORDERED AND ADJUDGED** that:

---

[6] As the ALJ noted (T 88, 89, 94), Plaintiff's neurologist, Qin Gu, M.D., observed at numerous appointments between October 2012 and August 2013 that Plaintiff was alert and fully oriented and had no significant abnormalities in memory, recall, concentration, judgment, or thoughts. (T 922, 926, 1036, 1031, 1032, 1043, 1108, 1112)  At a October 13, 2012 consultative examination, Rick Limbert, D.O., stated that Plaintiff was alert, his mood was appropriate, he had clear thought processes, his memory was normal and concentration was good, and that he was oriented to time, place, persons, and situation. (T 899)

(1)     the decision of the Commissioner is **AFFIRMED** and this case dismissed, with each

        party to bear its own costs and expenses; and

(2)     the Clerk of Court shall enter final judgment in favor of Defendant consistent with

        42 U.S.C. 405(g) and close this case.

**DONE AND ORDERED** in Tampa, Florida on this 14th day of August, 2015.


ELIZABETH A JENKINS
United States Magistrate Judge